IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| C.E., a minor, by and through his parents, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>MONTGOMERY COUNTY PUBLIC SCHOOLS,<br><br>*Defendant* | Action No. 24-cv-1941-ABA |

**MEMORANDUM OPINION AND ORDER**

Plaintiff C.E., by and through his parents (Calvin Thomas Esters, II, and Nza Esters) (collectively, "Plaintiffs"), filed this case in July 2024, challenging rulings by administrative law judges ("ALJs") in two proceedings Plaintiffs filed under the Individuals with Disabilities Education Act ("IDEA"). Plaintiffs have sought leave to obtain two categories of discovery outside the administrative records of those proceedings. For the following reasons, the request will be denied.

**I.      BACKGROUND**

In one of the two IDEA proceedings at issue, OAH No. MSDE-MONT-OT-23-22267 (the "-67" case), Plaintiffs contended that Montgomery County Public Schools ("MCPS" or "Defendant") had failed to provide services and aids required by C.E.'s Individualized Education Program (IEP), and had denied him a free and appropriate public education (FAPE) for 2022-23, a school year during which C.E. transferred from Northwood High School to Wheaton High School.

1

Following a due process hearing over the course of seven days in December 2023 through February 2024, ALJ Erin H. Cancienne issued a 37-page decision on March 7, 2024, ruling that (1) MCPS had not fully complied with C.E.'s IEP at Northwood by not providing a co-teacher in all of his classes, and thus had denied C.E. a FAPE, but that notwithstanding such deficiency C.E. was not entitled to compensatory education; (2) the transfer to Wheaton was not a "change in placement" and in any event did not result in a failure to provide C.E. with a FAPE; and (3) at Wheaton, where there were two IEPs prepared (in April 2023 and May 2023), as to the April 2023 IEP, although C.E.'s parents appear not to have been notified of the IEP, any procedural inadequacies did not impede C.E.'s rights to a FAPE or the parents' procedural rights, or deprive C.E. of any educational benefits, and, as to the May 2023 IEP, MCPS did not engage in any procedural violations.

In the other proceeding, OAH No. MSDE-MONT-OT-24-07353 (the "-53" case), MCPS requested a hearing to show that certain psychological and speech-language evaluations it conducted from October 2023 to January 2024 were appropriate and that C.E.'s parents did not have a right to an independent educational evaluation (IEE) at public expense. After a two-day due process hearing in May 2024, ALJ Jeffrey T. Brown issued a 24-page decision on June 7, 2024, ruling that the evaluations at issue complied with 34 C.F.R. § 300.303 and 300.304, which are the U.S. Department of Education's regulations on evaluation and reevaluation procedures, and COMAR 13A.05.01.05, which are the corresponding Maryland State Board of Education regulations on such assessments.

As noted above, Plaintiffs filed this case in July 2024, appealing both ALJ decisions. ECF No. 1; *see id.* ¶ 3 ("This action is an appeal of the decisions of the

Administrative Law Judges pursuant to the [IDEA]. Plaintiffs request compensatory services, reimbursement for tutoring services, an IEE that includes psychological and speech-language evaluations at public expense, attorney's fees and costs including expert witness fees, and other appropriate relief."). But rather than proceeding directly to briefing the merits of their appeal, Plaintiffs have sought leave to take discovery. ECF No. 14 (opening brief); ECF No. 19 (reply brief). Specifically, Plaintiffs seek an order compelling MCPS to produce two categories of evidence that fall outside the administrative record: (1) certain internal school emails around the time of C.E.'s transfer from Northwood to Wheaton; and (2) "testing protocols" for speech pathology and psychology assessments that Plaintiffs challenged in the -53 case.[1] Defendants have objected to both sets of requests. ECF No. 16.

## II.   DISCUSSION

### A.   Discovery in IDEA cases

Under the IDEA, where a person has been "aggrieved" by the "findings and decision made under" the IDEA, the person "shall have the right to bring a civil action with respect to the complaint." 20 U.S.C. § 1415(i)(2)(A). In a case seeking such judicial review, the court applies a "modified de novo review," affording "'due weight' to the state administrative proceedings." *G.M. by E.P. v. Barnes*, 114 F.4th 323, 333-34 (4th Cir. 2024) (quoting another case). "[T]he district court conducts an independent review,

---

[1] Plaintiff also requests that MCPS be ordered to "conduct a keyword search of its electronic servers or storage devices to ensure all discovery previously requested and subpoenaed is produced." ECF No. 14 at 21. Although MCPS responds to that as a separate category of request, *see* ECF No. 16 at 1, the Court understands that to constitute Plaintiff's proposed *method* by which documents in the two categories above should be identified and produced.

3

deferring to the hearing officer's 'regularly made' factual findings and ordering substantive or procedural relief as necessary." *Id.* at 330 (citing *Doyle v. Arlington Cty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991)). In such cases, the district courts "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

Although the IDEA permits reviewing courts to supplement administrative records, courts "normally determine these issues based solely on the administrative record." *Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 476 (4th Cir. 2009) (quoting *West Platte R–II Sch. Dist. v. Wilson*, 439 F.3d 782, 785 (8th Cir. 2006)). The IDEA "left the primary responsibility for teaching children and formulating educational policy with state and local education authorities." *Springer v. Fairfax Cty. Sch. Bd.*, 134 F.3d 659, 666 (4th Cir. 1998) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982)). "[C]ourts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" *Id.* (quoting *Rowley*, 458 U.S. at 208). That deference informs the standard of review for substantive IDEA determinations, such as whether a school district has denied a student a FAPE. *See, e.g.*, *G.M.*, 114 F.4th at 334. But it also informs *procedures* for judicial review of IDEA administrative determinations, including whether the district court may consider "additional evidence" that was not presented to, or considered by, the ALJ.

The Fourth Circuit has held that courts must take a "strict approach to the concept of 'additional evidence.'" *Springer*, 134 F.3d at 666-67. The *Springer* court

4

adopted the standard previously set forth in *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984). Under that standard, in order to give "due weight to the administrative proceeding," "additional" means "supplemental"; it does not, for example, "authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony." *Springer*, 134 F.3d at 667 (quoting *Town of Burlington*, 736 F.2d at 790). After all, "[a] lax interpretation of 'additional evidence' would 'reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the Act's judicial review mechanism into an unrestricted trial *de novo*.'" *Id.* (quoting *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 997 (1st Cir. 1990)).

Under this standard, evidence is considered "additional"—and thus, in general, appropriate for courts to consider even if outside the administrative record—where, for example, there were "gaps in the administrative transcript owing to a mechanical failure,"[2] a witness was "unavailabl[e]" to testify during the administrative proceeding, there was "improper exclusion of evidence by the administrative agency," or "events occurring subsequent to the administrative hearing" are "relevant" to the questions presented. *Town of Burlington*, 736 F.2d at 790. As to both categories of evidence at issue here, Plaintiffs requested them during the administrative proceedings, and the ALJs denied Plaintiffs' requests. *See* ECF No. 14, ¶¶ 11-12, 17-18. Accordingly, Plaintiff's request for discovery here is premised on the contention that the evidence was subject to "improper exclusion . . . by the administrative agency," *see Town of Burlington*, 736 F.2d at 790.

---

[2] *See, e.g.*, *Doe v. Newton Pub. Sch.*, 474 F. Supp. 3d 434, 446 (D. Mass. 2020) (admitting affidavit about a hearing that was not transcribed).

So what makes an administrative agency's exclusion of evidence "improper"? The parties here have not cited any cases on that question. The Fourth Circuit does not appear to have addressed that issue, at least not in the IDEA context. Where a federal court of appeals hears an appeal from a trial court judgment following a trial, it reviews the trial court's discovery rulings and evidentiary rulings for abuse of discretion. *See, e.g.*, *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018) (explaining that "a trial court has 'wide latitude in controlling discovery' and that discovery rulings are generally not overturned on appeal 'absent a showing of clear abuse of discretion'") (quoting *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003)); *Benjamin v. Sparks*, 986 F.3d 332, 346 (4th Cir. 2021) ("We review a trial court's rulings on the admissibility of evidence for abuse of discretion, and we will only overturn an evidentiary ruling that is arbitrary and irrational.").

These are appropriate standards for review of the ALJs' discovery rulings that Plaintiffs challenge. The abuse of discretion standard that the Court of Appeals applies to trial courts' discovery and evidentiary rulings is most consistent with the Fourth Circuit's direction in its IDEA discovery cases. In *Springer*, for example, the Fourth Circuit explained that its "strict approach to the concept of 'additional evidence' in section 1415(e)(2)" follows logically from the legislative and regulatory "structur[e]" for IDEA cases, under which courts must give "due weight to the administrative proceeding." 134 F.3d at 666-67 (citing *Town of Burlington*, 736 F.2d at 790, in turn citing *Rowley*, 458 U.S. at 206). *Springer* instructs that the "additional evidence" standard should be construed to "encourage[] thorough administrative review of special education disputes." *Id.* at 667. Applying a *de novo* review to all ALJ discovery and admissibility decisions, as opposed to a more deferential abuse-of-discretion standard,

would risk "reduc[ing] the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the [IDEA's] judicial review mechanism into an unrestricted trial *de novo*." *Id.* (quoting *Roland M.*, 910 F.2d at 997). In other words, courts must "protect the role of the administrative hearing as the primary forum in which to resolve disputes regarding IEPs." *Schaffer*, 554 F.3d at 476.

Moreover, an abuse-of-discretion standard of review, or one materially identical, is the one that the few cases that appear to have addressed the issue—*i.e.*, whether to permit discovery or the submission of evidence during an IDEA appeal that an ALJ or hearing officer expressly denied—have applied. *See Stanley C. v. M.S.D. of Sw. Allen Cty. Sch.*, 628 F. Supp. 2d 902, 925 (N.D. Ind. 2008) ("the [independent hearing officer] was squarely within his discretion when he explicitly declined to exclude the testimony of Dr. Fisher and Dr. Savage but rather gave the testimony proper weight in light of all the circumstances as he rendered his decision."); *Ms. K. ex rel. S.B. v. City of South Portland*, 403 F. Supp. 2d 108, 113 (D. Me. 2005) (denying request to admit additional evidence where plaintiff had not shown that the hearing officer's ruling excluding the witnesses from testifying was "erroneous and arbitrary").

For these reasons, where an ALJ has ruled, during an administrative adjudication, that certain evidence falls outside permissible discovery, or should be excluded from evidence, and where an IDEA plaintiff seeks discovery or admission of such evidence pursuant to 20 U.S.C. § 1415(i)(2)(C), a district court should review such rulings for abuse of discretion.[3]

---

[3] To be clear about the limits of the Court's holding, the only question presented here is the standard for when a district court should permit discovery of evidence that an ALJ *excluded* during an administrative proceeding. Whether other types of evidence may be

**B.     Emails regarding C.E.'s transfer from Northwood to Wheaton**

The first category of documents Plaintiffs seek an order compelling MCPS to produce are certain "emails regarding C.E.'s transfer from Northwood High School to Wheaton High School and the resulting changes to his IEP." ECF No. 14 at 4 ¶ 11. ALJ Cancienne denied this request for two independent reasons: that the emails were not relevant to any of the issues in dispute in the case, and that, in any event, they would be protected by the deliberative process privilege under Maryland law.

As noted above, where an ALJ has ruled, during an administrative adjudication, that certain evidence falls outside permissible discovery, or should be excluded from evidence, a district court reviews those rulings for abuse of discretion. Here, ALJ Cancienne did not abuse her discretion in concluding that the emails at issue would not have been relevant to any of the disputed issues in the case.

Under Maryland Office of Administrative Hearings procedures, subject to certain requirements of timing and form, a party may obtain discovery of "any file, memorandum, correspondence, document, object, or tangible item, including

---

the subject of discovery or submitted in IDEA appeals presents other considerations that are not raised here, such as whether a witness who testified during an administrative hearing may testify again in the district court, *Springer*, 134 F.3d at 667, whether an IDEA appellant may rely on testimony or evidence the party chose not to present during the administrative proceeding, *id.*, or made a "tactical decision not to obtain," *E.P. v. Howard Cty. Pub. Sch. Sys.*, No. 15-cv-3725-ELH, 2016 WL 6217119, at *10 (D. Md. Oct. 25, 2016), or whether an IDEA appellant may rely on evidence of "relevant events occurring subsequent to the administrative hearing," *Town of Burlington*, 736 F.2d at 790; *see also, e.g.*, *Schaffer*, 554 F.3d at 476 (discussing "post-hearing evidence"); *Doe v. Belchertown Pub. Sch.*, Case No. 16-cv-30189-MGM, 2017 WL 3706333, at *5 (D. Mass. Aug. 28, 2017) (allowing evidence of tuition paid after a hearing as "relevant to what damages could be awarded if the [administrative] hearing decision is reversed"); *M.S. v. Fairfax Cty. Sch. Bd.*, Case No. 05-cv-1476-JCC, 2006 WL 2376202, at *4 (E.D. Va. Aug. 11, 2006) (admitting "evidence pertaining to post-hearing IEPs").

electronically stored information, that is: (1) Relevant to the subject matter of the case; and (2) Not privileged." COMAR § 28.02.01.13(A). Similar standards apply to admission of evidence at due process hearings. *See* COMAR 28.02.01.21 (incorporating by reference "State Government Article, § 10-213, Annotated Code of Maryland, and other pertinent law"); Md. Code Ann., State Gov't § 10-213 (evidence standards in contested cases under the Maryland Administrative Procedure Act).

Plaintiffs here challenge ALJ Cancienne's relevance ruling. They contend that "the emails that the ALJ did not order MCPS to release would have clarified the circumstances surrounding the [change of school assignment] [and] C.E.'s educational placement," and prove that MCPS had denied him a FAPE. ECF No. 14 at 16-17. But in the proceeding before ALJ Cancienne, the sole issue as to which Plaintiffs apparently contended the emails would be relevant was to attempt to show that MCPS had not held an IEP meeting before C.E. was transferred to Wheaton, or given notice of such meeting. *See id.* at 6-7 (quoting transcript of ALJ Cancienne's ruling denying Plaintiffs' motion to compel). But ALJ Cancienne was ruling *for* Plaintiffs on that factual issue—*i.e.*, that neither an IEP meeting was held nor notice given—and thus Plaintiffs had not shown any relevance of the emails to any of the *disputed* issues. *See id.* at 7 ("The lack of an IEP meeting is going to be clear in the record because there's no documentation to support there was an IEP meeting. . . . Whether that was appropriate or not appropriate will certainly be something that I can address in the decision."). Given this context, Plaintiffs have not shown that ALJ Cancienne abused her discretion in denying Plaintiffs' motion to compel production of those emails.

As an alternative ground for denying Plaintiffs' motion to compel, ALJ Cancienne held that Plaintiffs would not be entitled to the emails in any event because they are

9

protected by the deliberative process privilege. *See id.* at 5, 7 (ALJ's holding that even if the emails were relevant, they are privileged because they constitute "emails between school-only employees regarding their discussions about how to handle a specific student and/or . . . potential moves and/or changes to the student's location or other things" where "employees were encouraged to speak freely about whatever they were going to decide . . . to help figure out what was the way to go"); *see also, e.g.*, *Abell Found. v. Balt. Dev. Corp.*, 262 Md. App. 657, 708 (2024) ("Th[e] deliberative-process privilege protects documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'") (quoting *Stromberg Metal Works, Inc. v. Univ. of Md.*, 382 Md. 151, 165 (2004)). Plaintiffs challenge this alternative privilege ruling by contending (1) the privilege does not apply to emails that "transpired after C.E. was pulled from class at Northwood High School and informed of the transfer to Wheaton High School" because the privilege applies only to "pre-decisional" communications, *see* ECF No. 14 at 15, 17; and (2) "[e]ven if the email and communications prior to April 11, 2023 are considered 'pre-decisional,' MCPS's failure to provide prior written notice of the COSA opens it to scrutiny, and the law permits Plaintiffs to inspect and review all records related to the action." *Id.* at 17. But here, the Court need not reach this issue. ALJ Cancienne's denial of the motion to compel on relevance grounds was a sufficient and independent basis for denying the motion. Accordingly, the Court need not and does not decide whether the internal emails related to C.E.'s transfer were protected by the deliberative process privilege.

For these reasons, ALJ Cancienne did not abuse her discretion in denying Plaintiffs' motion to compel, and accordingly Plaintiffs' request to seek such discovery in this case is denied.

### C. Testing documentation

The other category of documents that Plaintiffs seek as "additional evidence" discovery relates to the -53 case. As noted above, in the -53 case Plaintiffs sought new psychological and speech-language evaluations at public expense; MCPS had already conducted two evaluations and filed a complaint to establish that these evaluations were appropriate and sufficient. The first evaluation at issue was a speech-language assessment of C.E. by Andrea Tame, whom the ALJ accepted as an expert in speech language pathology, and who "relied on standardized assessment procedures, including the Comprehensive Assessment of Spoken Language -2 (CASL-2) test." *See* June 6, 2024 ALJ Ruling at 4, 6-7. Ms. Tame conducted her CASL-2 assessment over the course of four dates between October 27 and November 17, 2023. *Id.* at 6. The second challenged evaluation was a psychological assessment of C.E. by Kirlann Danclar, a school psychologist, whom the ALJ accepted as a school psychology expert. *Id.* at 4, 7-9. Over the course of several days from November 2023 to January 2024, Ms. Danclar administered the Wechsler Intelligence Scale for Children (Fifth Edition) (WISC-V), the Behavioral Assessment System for Children-3 (BASC-3), the Conners 4th Edition test for Attention, and the Comprehensive Executive Function Inventory (CEFI). *Id.* at 7-8.

Plaintiffs state that after those assessments were concluded, they "requested MCPS testing protocols" in February and May 2024. ECF No. 14 at 18. They concede they are "unclear" about "what is contained in MCPS test protocols" but contend they "generally include score sheets with student answers and scores" and/or "prompts of the

11

test questions and instructions for the test administrators." *Id.* at 19. Plaintiffs contend that "whether an educational evaluation was appropriate turns on whether the proper methodologies were used and not [] the results or conclusions of assessments," *id.* at 18 (citing *E.P. v. Howard Cty. Pub. Sch. Sys.*, Case No. 15-cv-3725-ELH, 2017 WL 3608180 (D. Md. Aug 21, 2017)), and that without access to the underlying "protocols" for those assessments their expert, Dr. Jay Lucker, was "not able to challenge the methodologies MCPS used when it administered the tests to C.E." *Id.* at 19; *see also id.* ("A review of MCPS test protocols would have enabled Plaintiffs' expert to testify to MCPS's ability to diagnose the auditory processing disorder during its evaluation and thereby, the appropriateness and reliability of the MCPS results.").

The Court denies Plaintiffs' request, for two independent reasons.

First, ALJ Brown denied the request because Plaintiffs waited until the day of the hearing to raise the issue. *See* ECF No. 16 at ¶ 6; *see also* MSDE-MONT-OT-24-07353, V1, p. 20-21 (transcript of ruling, in which ALJ explains that the basis for denying the request was because it was "only being made for the first time here," and explaining, "[i]f this was an issue of importance, it should have properly been the subject of a Motion in Limine properly supported by applicable authority"). As stated above, ALJs' rulings regarding discovery and evidentiary issues are reviewed for abuse of discretion. Under the applicable procedures, any request for production of documents must be made "[b]y written request filed not later than 30 days before the scheduled hearing." COMAR 28.02.01.13(A). ALJ Brown did not abuse his discretion in denying Plaintiffs' request as untimely.

Second, Plaintiffs have not shown what they mean by "protocols," or what such "protocols" would show. They do not contend that any of the assessments—the CASL-2

for the speech-language assessment, and the WISC-V, BASC-3, and CEFI for the psychological assessment—were unreliable or otherwise improper tests to conduct. They concede that their own expert, Dr. Lucker, did not identify any basis on which to "challenge the methodologies" for those assessments. ECF No. 14 at 19 (citing testimony at MSDE-MONT-OT-24-07353, V2, p. 206 et seq.); *see also E.P.*, 2017 WL 3608180 at *18 (the appropriateness of an evaluation "turns on whether the proper methodologies were utilized"). Indeed, at the hearing, Plaintiffs' counsel stated, "The issues here are not about whether the tests the school performed were valid. On their face, the tests are valid. The question here is whether they were appropriate for [C.E.] and his disability." MSDE-MONT-OT-24-07353, V2, p. 229. Accordingly, even if their request had been timely, and insofar as by "protocols" Plaintiffs were seeking copies of assessment questions or the like, *see* ECF No. 14 at 18 (referring to "the test publisher's information"), Plaintiffs have not shown that such information would have been relevant to any of the issues presented during the due process hearing.

For these reasons, Plaintiffs' request for production of "test protocols" is denied as well.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiffs' "request to take discovery in this matter," ECF No. 14 at 1, is denied. The parties shall confer and, within 14 days of this order, file a joint status report regarding a schedule for merits briefing.

Date: February 11, 2025                          /s/
                                                                 Adam B. Abelson
                                                                 United States District Judge