# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

C.E., a minor, by and through his
parents, *et al.*,

    *Plaintiffs,*

    v.

MONTGOMERY COUNTY PUBLIC
SCHOOLS,

    *Defendant.*

Case No. 24-cv-1941-ABA

## MEMORANDUM OPINION

C.E. was a high school student in Montgomery County at the time this complaint was filed. He has a disability that qualified him for certain accommodations and services in public schools under the Individuals with Disabilities Act ("IDEA"). C.E. and his parents, Calvin Thomas Esters II and Nza Esters, allege that Defendant Montgomery County Public Schools ("MCPS") denied him educational benefits in violation of the IDEA. The Maryland Office of Administrative Hearings ("OAH") has adjudicated two cases between the Esters and MCPS concerning C.E.'s educational benefits, and found for MCPS in both cases. C.E. and his parents have now sued in this Court challenging both adverse OAH decisions on all issues. For the reasons below, the Court agrees with the OAH decisions and concludes that Plaintiffs are not entitled to any compensation or benefits from MCPS under the IDEA.

1

I.    BACKGROUND

A.    The Individuals with Disabilities Education Act

The IDEA entitles children with disabilities to a free, appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1).[1] Where a student is entitled to "special education and related services," *id*. § 1401(9) (defining a FAPE), the IDEA requires that a school district provide "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability," *id*. § 1401(29), as well as "the support services 'required to assist a child . . . to benefit from' that instruction." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017) (quoting 20 U.S.C. § 1401(26)). Though a FAPE does require *special* education, a FAPE "is not synonymous with the *best possible* education." *G.M. ex rel. E.P. v. Barnes*, 114 F.4th 323, 342 (4th Cir. 2024) (emphasis added) (quotation omitted).

A state must provide a qualifying child with a FAPE if that state receives federal funds for special education. *See G.M.*, 114 F.4th at 329. Maryland is such a state. Md. Code, Educ. § 8-403 (2024). To "tailor[ a FAPE] to the unique needs" of a child, *Endrew F.*, 580 U.S. at 391, a school must convene a team comprised of the child's parents, general-education teachers, special-education teachers, and other education professionals, *see* 20 U.S.C. § 1414(d)(1)(B). This team creates a comprehensive plan for the child, called an individualized education program, or IEP. *See id*. §§ 1401(9)(D), 1414; *accord* Md. Code Regs. 13A.05.01.06–.09. The IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."

---

[1] To ensure all such children can receive a FAPE, both the federal government and Maryland enforce certain regulations. 34 C.F.R. § 300 *et seq.* (2024); Md. Code Regs. 13A.05.01 (2022).

*Endrew F.*, 580 U.S. at 399 (quotation omitted). And the IEP must aim to deliver the FAPE in the "least restrictive environment." 20 U.S.C. § 1412(a)(5); Md. Code Reg. 13A.05.01.10. That is, "[t]o the maximum extent appropriate, children with disabilities . . . [should be] educated with children who are not disabled." 20 U.S.C. § 1412(a)(5)(A).

Of course, "parents and educators will not always agree" on what the IEP should include. *G.M.*, 114 F.4th at 330 (citation omitted). When this happens, parents may either mediate with the school or file a complaint to be heard, first in a preliminary meeting, then, if issues persist, at a due process hearing before a state educational agency. *See* 20 U.S.C. § 1415(e)–(g). The Maryland Office of Administrative Hearings holds such hearings. Md. Code, Educ. § 8-413; Md. Code Regs. 13A.05.01.15(C). "Once those state procedures are exhausted, the IDEA authorizes any party aggrieved by the hearing officer's determination to file a civil suit in federal court." *G.M.*, 114 F.4th at 330 (citing 20 U.S.C. § 1415(i)(2)(A)); *accord* Md. Code Regs. 13A.05.01.15(C)(20) ("A party aggrieved by the findings and decision of a due process hearing may bring a civil action in State or federal court."); Md. Code, Educ. § 8-413(j).

The IDEA also entitles parents to "an independent educational evaluation [IEE] at public expense if the parent disagrees with an evaluation obtained by the public agency," subject to certain conditions. 34 C.F.R. § 300.502(b)(1). "When a parent requests an IEE, the school district must either '[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate' or '[e]nsure that an independent educational evaluation is provided at public expense[.]'" *Lee v. Bd. of Educ. for Prince George's Cnty.*, Case No. 22-cv-957-DKC, 2024 WL 361330, at *23 (D. Md. Jan. 31, 2024) (quoting 34 C.F.R. § 300.502(b)(2)). "[A] parent is only entitled to reimbursement for the IEE if the evaluation by the public agency was not appropriate."

*E.P. By & Through J.P. v. Howard Cnty. Pub. Sch. Sys.*, Case No. 15-cv-3725-ELH, 2017 WL 3608180, at *5 (D. Md. Aug. 21, 2017), *aff'd sub nom. E.P. v. Howard Cnty. Pub. Sch. Sys.*, 727 F. App'x 55 (4th Cir. 2018). As with challenges to an IEP, the losing party may challenge an adverse OAH decision regarding an IEE in federal court. 34 C.F.R. § 300.516(a).

Before the OAH, students and parents bear the burden of proof regarding challenges on the basis of a denial of FAPE, but a school district carries the burden regarding the appropriateness of its assessment and the lack of need for an IEE. *See Weast v. Schaffer ex rel. Schaffer*, 377 F.3d 449, 456 (4th Cir. 2004) ("[P]arents who challenge an IEP have the burden of proof in the administrative hearing."); 34 C.F.R. § 300.502(b)(2)(i). In this Court, Plaintiffs bear the burden of proof on both the IEP and assessment issues as the party challenging the agency determination. *See Bd. of Educ. of Montgomery Cnty. v. Hunter ex rel. Hunter*, 84 F. Supp. 2d 702, 705 (D. Md. 2000) ("[P]arties aggrieved by the administrative decision may file suit in federal district court, [and] [t]he burden of proof is on the party challenging the administrative decision."); *E.P.*, 2017 WL 3608180, at *9 ("Plaintiffs bear the burden of establishing, by a preponderance of evidence, that, . . .the [school district's] evaluation of [the student] was inappropriate and therefore [the student] is entitled to an IEE at public expense.").

**B.    Facts**

The following statement of facts relies on the ALJs' findings of fact, which the Court accepts as true for the reasons explained below. *See Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991) (holding that an ALJ's "regularly made" factual findings should be "considered *prima facie* correct"); §§ II & III.A.1, *infra* (determining that both ALJs' factual findings here were regularly made).

C.E. was a high school student in Montgomery County during the relevant time period. He was in tenth grade during the 2022–2023 school year and eleventh grade for the 2023–2024 school year, and has since graduated. *Montgomery Cnty. Pub. Schs. v. [C.E.]*, MSDE- MSDE-MONT-OT-24-07353 (Md. Off. Admin. Hearings, ALJ Jeffrey T. Brown, June 7, 2024) (hereinafter, "Brown Decision"), Findings of Fact (hereinafter, "Brown Facts") ¶ 1; ECF No. 28 (Plaintiffs' request for a status conference stating that C.E. was slated for graduation). C.E. has Klinefelter syndrome, a genetic condition that, among other issues, affects his language and speech abilities. *Id.* ¶¶ 3–4. While in school, C.E. received special education services because this disability qualified as an Other Health Impairment (OHI). *Id.* ¶ 4. In June 2022, before the beginning of his tenth grade year, C.E.'s IEP team met to revise his IEP (the "June 2022 IEP"). *[C.E.] v. Montgomery Cnty. Pub. Schs.*, MSDE-MONT-OT-23-22267 (Md. Off. Admin Hearings, ALJ Erin H. Cancienne, March 7, 2024) (hereinafter, "Cancienne Decision"), Findings of Fact (hereinafter, "Cancienne Facts") ¶ 2. The June 2022 IEP included several accommodations and supplementary aids, including co-taught or "supported" classes in certain subjects. *Id.* ¶¶ 4–5; Cancienne Decision at 15.

### i. The 2022–2023 school year

C.E. began the school year at Northwood High School (Northwood). *Id.* ¶ 10. Among other courses, he was placed in a self-contained Gifted and Talented Learning Disabled ("GTLD") Resource class. *Id.* ¶ 13. "GTLD" refers to students who are *both* gifted and talented and have a learning disability. Cancienne Decision at 8 n.24. And "self-contained" means a class only with students who have an IEP. *Id.* at 26.  At the beginning of the school year, there were not co-teachers in two of C.E.'s classes: AP Government and Algebra 2. *Id.* ¶ 14. C.E.'s IEP was amended in January 2023 (the

"January 2023 Amended IEP"), but largely continued the same goals, accommodations, and supplementary aids from C.E.'s June 2022 IEP. *Id.* ¶ 18–21.

In the fall of 2022, C.E.'s parents made several complaints to teachers and administrators at Northwood alleging a failure to provide special education accommodation as well as more general issues concerning grading and racial insensitivity. *Id.* ¶ 23. At least some of the concerns were related to an English teacher assigning the music video "This is America" by the rapper Childish Gambino. *Id.* ¶ 17. In January and March 2023, C.E.'s parents requested a Change in School Assignment (COSA), which MCPS denied. *Id.* ¶¶ 24–26. In April 2023, following several phone conversations between C.E.'s parents and an MCPS assistant superintendent, C.E. was pulled out of class and informed that he was being transferred to Wheaton High School ("Wheaton"). *Id.* ¶ 28. The next day, C.E.'s parents sent the assistant superintendent an email with the subject line "Wheaton Transfer Request" stating that, "[w]ith the caveat that the same classes and after-school sports (Boy's Tennis) will be made available, we would like to pursue moving him to Wheaton as soon as possible." *Id.* ¶ 30.

C.E. began attending Wheaton in April 2023. On his first day there, C.E.'s IEP was amended (the "April 2023 Amended IEP"). The only amendment was that C.E.'s service school changes from Northwood to Wheaton. *Id.* ¶ 34. There was no meeting concerning the April 2023 Amended IEP. C.E. was able to take the same courses at Wheaton (and via the MCPS virtual academy), except his Resource class at Wheaton was not self-contained and was not designated GTLD. *Id.* ¶¶ 36–37. For some of his time at Wheaton, C.E.'s Chemistry and Algebra II classes did not have a co-teacher. *Id.* ¶ 39.

C.E. received a new IEP in May 2023 (the "May 2023 IEP"). This IEP specified that C.E. would only receive instruction outside of general education for forty minutes

per week. *Id.* ¶ 42. The May 2023 IEP included attention deficit-hyperactivity disorder (ADHD) as part of C.E.'s OHI. *Id.* ¶ 41.

After completing the 2022–2023 school year, C.E. had a cumulative GPA of 4.0 and a cumulative weighted GPA of 4.71 and had earned fifteen credit hours in his courses. *Id.* ¶ 43. C.E. received separate tutoring services during the school year procured by his parents at a cost of $4,887.34. *Id.* ¶ 45.

### ii.    The 2023–2024 school year

C.E. continued at Wheaton for the 2023–2024 school year. The relevant issues in this school year concerned assessments. In October 2023, C.E.'s IEP team met and determined that C.E. would need new assessments to confirm whether he remained eligible for special education services. Brown Facts ¶ 7. C.E.'s parents consented to MCPS conducting the necessary assessments. *Id.* ¶ 8.

MCPS conducted two types of assessments of C.E that are relevant here. First, Andrea Tame, a speech language pathologist, conducted a speech-language assessment. *Id.* ¶¶ 9–21. Ms. Tame reviewed C.E.'s files and prior assessments, observed him in the classroom, analyzed a speech-language sample, and had C.E. take a standard test. *Id.* ¶¶ 9–11. In January 2024, Ms. Tame issued a report in which she concluded that C.E. still had speech-language issues that were harming his academic performance in expressive and receptive language. *Id.* ¶ 20.

The second assessment was by Kirlann Danclar, a school psychologist. *Id.* ¶¶ 22–42. Ms. Danclar performed a psychological assessment of C.E. by interviewing him, performing a direct classroom observation, collecting observations from C.E.'s parents and teachers, and conducting formal testing. *Id.* ¶ 24–28. Ms. Danclar concluded that C.E. continued to need special educational services in her January 2024 report. *Id.*

### C.    Procedural history

#### i.    The -67 case

C.E.'s parents filed a Due Process Complaint with the OAH on C.E.'s behalf in August 2023. A hearing was scheduled to resolve five issues:

1. Did the MCPS fail to provide services and aids required in the Student's [IEP] for the 2022–2023 school year, including but not limited to a) co-teacher support, and b) accommodations?
2. Was the transfer of the Student from Northwood to Wheaton in the spring of 2023 a change in placement or a change in location under the IDEA?
3. Did the transfer of the Student from Northwood to Wheaton deny the Student a [FAPE] for the 2022–2023 school year?
4. Did the IEP team at Wheaton properly develop an IEP for the Student when he transferred to Wheaton?
5. [Did] the IEP created by the Wheaton IEP team [deny] the Student a FAPE?

Cancienne Decision at 4. ALJ Cancienne conducted the hearing across seven days in December 2023, January 2024, and February 2024. *Id.* at 2. Both parties were represented by counsel. ALJ Cancienne heard testimony from six witnesses and reviewed dozens of exhibits submitted by the parties. *Id.* at 5, Appendix I.

ALJ Cancienne issued a detailed 37-page written decision in March 2024. After weighing the evidence, making factual findings, and outlining the appropriate legal standards, ALJ Cancienne found for MCPS on most issues. She concluded that MCPS had denied C.E. a FAPE by failing to provide co-teacher support, but that C.E. was nonetheless not entitled to compensatory services because he continued to make academic progress. *Id.* at 36. ALJ Cancienne concluded that the transfer to Wheaton did not change C.E.'s educational placement and did not result in him being denied a FAPE. *Id.* Finally, ALJ Cancienne determined that although the April 2023 Amended IEP was

8

not created in a procedurally proper manner, the procedural issues did not cause C.E. to be denied a FAPE, and that the May 2023 IEP was procedurally proper. *Id.*

### ii.    The -53 case

The -53 case concerns C.E.'s assessments in the 2023–2024 school year. C.E.'s parents initially requested an independent educational evaluation (IEE) at public expense on January 10, 2024, contending that MCPS had not completed the assessments within 90 days. Brown Decision at 1. MCPS denied this request as premature, as it came before it had scheduled an IEP meeting. *Id.* When the IEP team did meet in February 2024, the participants reviewed the results of the assessment, and C.E.'s parents stated their disagreement with the results and again requested an IEE at public expense. *Id.* at 2. MCPS agreed to fund an *educational* assessment at public expense, but denied the request as to psychological and speech-language assessments. *Id.* MCPS subsequently filed a Due Process Complaint with the OAH, seeking a decision stating that the psychological and speech-language assessments were appropriate and that C.E. was not entitled to new psychological and speech-language IEEs at public expense. *Id.* at 2.

In May 2024, ALJ Brown of the OAH oversaw a two-day remote hearing. Both parties were represented by counsel. In addition to the parties' exhibits, ALJ Brown heard testimony from five witnesses, including Tame and Danclar as well as C.E.'s audiology and speech-language pathology expert, Jay R. Lucker. *Id.* at 4. ALJ Brown issued a detailed 24-page written decision in June 2024 addressing the following issues:

1. Were the psychological and speech-language evaluations conducted by the MCPS appropriate?
2. Should the MCPS be required to pay for IEEs for psychological and speech-language evaluations of the Student at public expense?

9

*Id.*

After weighing the evidence, making findings of fact, and outlining the appropriate legal standard, ALJ Brown concluded that the MCPS assessments were appropriate under Maryland and federal law, and as such MCPS should not be required to pay for further IEEs at public expense. *Id.* at 23.

### iii.   Proceedings before this Court

C.E. and his parents filed a complaint in this Court in July 2024, alleging violations of the IDEA. ECF No. 1. Plaintiffs moved to take discovery outside the administrative record. ECF No. 14. They sought MCPS internal emails and testing protocols that had been the subject of unsuccessful motions to compel in the -67 proceeding. *Id.* at 9–21. The Court denied this motion, finding that ALJ Cancienne did not abuse her discretion in denying the motions to compel. ECF No. 20 at 8–13; *C.E. v. Montgomery Cnty. Pub. Schs.*, 765 F. Supp. 3d 473, 482 (D. Md. 2025).

Both parties have now moved for judgment on the administrative record.[2] ECF Nos. 23, 27. These motions are fully briefed.

## II.   STANDARD OF REVIEW

A district court faced with a motion for summary judgment in an IDEA case "must make an independent assessment . . . based on a preponderance of the evidence, while still giving due weight to the state administrative proceeding." *S.A. v. Weast*, 898 F. Supp. 2d 869, 873 (D. Md. 2012) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch.*

---

[2] OAH provided hearing transcripts and exhibits in September 2024 following this Court's order. *See* ECF No. 11. In March 2026, the Court directed the parties to provide an electronic copy of volume 4 of the hearing transcript in the -67 case, which was not in the records that OAH had previously sent. ECF No. 34. Both parties transmitted an identical copy of volume 4 directly to chambers.

*Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982)). "Due weight" means that the ALJ's factual findings "must 'be considered *prima facie* correct'" so long as they are "regularly made." *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 516 F.3d 254, 259 (4th Cir. 2008). An assessment of whether findings were regularly made "focuses on the '*process* through which the findings were made,' not the results of that process." *G.M.*, 114 F.4th at 334 (4th Cir. 2024) (quoting *Bouabid v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 62 F.4th 851, 857 (4th Cir. 2023)). The procedure is acceptable, and the factual findings are entitled to deference, when the ALJ "employs a process that is not 'far from the accepted norm of a fact-finding process.'" *Id.* (quoting *J.P.*, 516 F.3d at 259). Additionally, "[t]he fact-finder, who has the advantage of hearing the witnesses, is in the best position to assess credibility." *Wagner v. Bd. of Educ. of Montgomery Cnty., Maryland*, 340 F. Supp. 2d 603, 611 (D. Md. 2004) (quotation omitted).

Plaintiffs in IDEA cases "carry the burden of proof" by a preponderance of the evidence. *S.A.*, 898 F. Supp. at 874. "When assessing whether that burden has been met, [courts] are not entitled to 'substitute [their] own notions of sound educational policy for those of local school authorities.'" *G.M.*, 114 F.4th at 334 (quoting *Hartmann ex rel. Hartmann v. Loudoun Cnty. Bd. of Educ.*, 118 F.3d 996, 999 (4th Cir. 1997)). Courts must give "great deference to the views of the school system rather than [to] those of even the most well-meaning parent." *Id.* (quoting *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 328 (4th Cir. 2004)).

When, in an IDEA case, cross-motions for summary judgment are filed, the general standards of review for summary judgment motions also apply. The moving party must show "that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a moving party has made that showing, a court must consider the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 115 F.4th 266, 277 (4th Cir. 2024) (quotation omitted).

## III.    DISCUSSION

### A.    The ALJs' findings were regularly made and are entitled to due weight

Under the standards articulated above, the Court must first determine whether the ALJs' factual findings were "regularly made," and thus entitled to a presumption of correctness. As explained, this initial inquiry "turns on the *process* by which the ALJ[s] reache[d] [their] decision[s]," not the substance of their findings. *M.M. ex rel. J.M. v. Foose*, 165 F. Supp. 3d 365, 376 (D. Md. 2015); *see also G.M.*, 114 F.4th at 335 ("[A] substantive inquiry would defeat the point of focusing on procedure, namely, to accord proper deference to the original finder of fact in this necessarily fact-intensive class of cases.") (quotations omitted). This Court must assume the factual findings are correct if the ALJ "conducted a proper hearing, allowing the parents and the School Board to present evidence and make arguments, and . . . resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case." *J.P.*, 516 F.3d at 259. "Mere disagreement with the

12

ALJ's determinations does not render the facts 'irregularly made.'" *R.S. v. Smith*, Case No. 20-cv-1300-PX, 2021 WL 3633961, at *9 (D. Md. Aug. 17, 2021).

Here, both ALJ Cancienne and Brown's factual findings were regularly made. Both ALJs heard testimony from multiple witnesses and reviewed a significant documentary record. Both ALJs explained the bases for their factual findings and legal conclusions, carefully interpreting the evidentiary record and explaining their credibility determinations. This level of detail confirms that the ALJs' decisions were regularly made, as even "bare-boned" decisions that provide "no explanation of which evidence the hearing officer found to be most important" are often entitled to deference. *G.M.*, 114 F.4th at 335 (quoting *J.P.*, 516 F.3d at 262). Further, Plaintiffs do not seriously dispute that the ALJs' findings were regularly made and have not raised any serious procedural errors that would indicate the hearings were conducted far outside the norm. To the extent Plaintiffs' motion to seek discovery outside the administrative record raised procedural objections, the Court has already denied that motion and explained why the ALJs did not commit procedural missteps. *C.E.*, 765 F. Supp. 3d at 479–482.

Accordingly, the Court finds that the ALJ decisions were both regularly made, and will accept the factual findings as correct unless disproven by Plaintiffs.

### B.     Plaintiffs are not entitled to compensatory services or reimbursement due to the partial lack of co-teachers

ALJ Cancienne found that, as a matter of law, MCPS had denied C.E. a FAPE by failing to include co-teachers in two classes at the beginning of the 2022–2023 school year as required by C.E.'s IEPs. But the ALJ found that this was, in essence, harmless error, because C.E. had made sufficient progress during the school year anyway. Plaintiffs obviously do not challenge the ALJ's finding that C.E. was denied a FAPE, but

argue that the ALJ was too reliant on C.E.'s grades in determining that he had made progress. ECF No. 23-1 at 19. Plaintiffs also contend that the updated MCPS assessments from January 2024 (the same assessments that are the subject of the -53 case), showed that C.E. "did not make academic progress." ECF No. 23-1 at 21.

"[C]ompensatory education is an equitable remedy addressing a school district's past failure to provide a FAPE that encompasses a broad array of potential remedies." *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 843 (4th Cir. 2021).[3] The IDEA "confers 'broad discretion' on the court in fashioning an appropriate remedy," which can include "partial reimbursement." *M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 325 (4th Cir. 2009) (quoting *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985)); *see also* 20 U.S.C. § 1415(i)(2)(C)(iii) (in an IDEA case, the court "shall grant such relief as [it] determines is appropriate") But "[t]he equitable nature of the IDEA statute does not mean, of course, that courts are at liberty to award reimbursement out of the blue. Rather, . . . the IDEA provides for reimbursement only if (1) the school district fails to provide a FAPE and (2) the parental placement is reasonably calculated to enable the child to receive educational benefits."

---

[3] Although C.E. has already graduated from MCPS, Plaintiffs' request for compensatory education and reimbursement renders their claims not moot. Because of its "'backward-looking' character . . . a claim for compensatory education is not rendered moot simply because the student has left the defendant school district." *Johnson*, 20 F.4th at 843. This Court recently explained in *Fisher v. PGCPS Board of Education* that the Fourth Circuit's holding in *Johnson* applies equally to a student who has already graduated. Case No. 23-cv-1693-ABA, 2025 WL 2418620, at *9–10 (D. Md. Aug. 21, 2025); *see also Brooks v. District of Columbia*, 841 F. Supp. 2d 253, 258–59 (D.D.C. 2012) (collecting cases from other jurisdictions holding similarly). The Court incorporates its reasoning in *Fisher* herein, and holds that C.E.'s graduation has not mooted Plaintiffs' claims because they seek retrospective compensatory education and reimbursement.

*M.S.*, 553 F.3d at 325 (quotation omitted). "Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 16 (1993).

Here, the Court agrees with ALJ Cancienne that a reimbursement award for the tutoring services due to a partial failure to provide co-teachers would not be appropriate and reasonable. ALJ Cancienne found that C.E.'s grades, progress reports, and the witness testimony all indicated that he had made progress academically and on his IEP goals. Cancienne Decision at 19–21. While the ALJ acknowledged that C.E. and Ms. Esters had testified regarding C.E.'s stress, anxiety, and late nights spent studying, the ALJ found that Plaintiffs had submitted no testimony to link these difficulties specifically to the lack of co-teachers in some classes for limited portions of the school year. *Id.* at 21. ALJ Cancienne likewise found no evidence or testimony connecting the tutoring services to either an improvement in C.E.'s grades or the deficiencies presented by the partial lack of co-teachers. *Id.* Plaintiffs contend that the ALJ focused disproportionately on C.E.'s grades, ignoring other signs of struggle. ECF No. 23-1 at 18–19. But although not every disabled student "who is advancing from grade to grade in a regular public school system is automatically receiving a [FAPE]," "[t]he grading and advancement system . . . constitutes an important factor in determining educational benefit." *Rowley*, 458 U.S. at 203, n.25. Further, ALJ Cancienne did not solely rely on the grades, but rather also considered C.E.'s progress reports, the other exhibits, and the witness testimony holistically. Cancienne Decision at 20–21. The ALJ specifically found that Ms. Esters's testimony that C.E. had not made progress was "self-serving" and "unpersuasive." That credibility determination is entitled to significant weight.

Plaintiffs' other argument is that MCPS's 2024 assessments demonstrate that C.E. did not make progress. But these assessments were issued prior to the -67 hearing, so they were not before ALJ Cancienne. Plaintiffs had the burden before the OAH. The Court will not reverse the ALJ's decision based upon evidence that was not in the record.

For these reasons, Plaintiffs are not entitled to compensatory educational services or tutoring reimbursement related to the co-teacher deficiency in the 2022–2023 school year.

### C.    MCPS did not deny C.E. a FAPE for the 2022–2023 school year in transferring C.E. to Wheaton

Plaintiffs argue next that MCPS denied C.E. a FAPE when it transferred him to Wheaton. They contend the transfer was a change in "educational placement" under 20 U.S.C. § 1414(e), rather than a mere change of location because Wheaton, unlike Northwood, did not have a self-contained GTLD resource class. ECF No. 23-1 at 22–23. C.E.'s operative IEP specified that he should be in a self-contained, GTLD resource class. Cancienne Decision at 26. As noted above, a "self-contained, GTLD" class refers to a class in which all the students have an IEP, and in which the students are gifted and talented *and* learning disabled. *Id.* at 8 n.24, 26. In other words, Plaintiffs contend, and C.E.'s IEP specified, that C.E. should have been in a gifted-and-talented resource class that only contained other students with IEPs at Wheaton, but that he was not placed in such a class because no such classes existed. Plaintiffs argue that this deficiency itself denied C.E. a FAPE, and separately that C.E. was denied a FAPE because a change in placement requires a corresponding IEP team meeting involving the student's parents, which did not occur. *Id.* at 25–26.

A student's "educational placement" under the IDEA "refers to the overall educational environment rather than the precise location in which the disabled student is educated." *AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 676 (4th Cir. 2004). "[A] change in school constitutes a change in placement only if the change resulted in a dilution of the quality of the student's education or a departure from the student's [least restrictive environment]-compliant setting." *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 681 n.10 (4th Cir. 2007) (quotations and alterations omitted). Parents must be part of "any group that makes decisions on the educational placement of their child." 20 U.S.C. § 1414(e). Regarding deviations from an IEP, "the failure to perfectly execute an IEP does not necessarily amount to the denial of a [FAPE]." *Sumter Cnty. Sch. Dist. 17 v. Heffernan ex rel. TH*, 642 F.3d 478, 484 (4th Cir. 2011). For example, "courts in this district have found no material failure when the school district . . . provided a general education classroom with paraeducator support instead of pull-out math instruction as specified in the IEP; . . . moved the child into a smaller class comprised of special education students; [or] . . . provided a child with more hours of special education than required by the IEP." *Lee*, 2024 WL 361330, at *16 (collecting cases).

Plaintiffs have not shown that the transfer to Wheaton or lack of meeting denied C.E. a FAPE. When Plaintiff transferred from Northwood to Wheaton, the only change in his courses was his resource class, which was a self-contained GTLD at Northwood but not self-contained and not GTLD at Wheaton. Cancienne Facts ¶ 36–37. ALJ Cancienne weighed the testimony and documentary record and determined that the Wheaton resource class was substantially similar to the self-contained GTLD class at Northwood. Cancienne Decision at 27.

17

The Court agrees that the deviation from the IEP was not sufficiently material to deny C.E. a FAPE. The Wheaton resource class had a roughly 7:1 student-to-teacher ratio, allowed C.E. additional time to work on assignments and tests as he had in his Northwood class, and involved significant individualized, supportive attention. Cancienne Decision at 26–27; *see also Endrew F.*, 580 U.S. 386, 403 (the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"); *Q.K. v. Smith*, Case No. 21-cv-283-JKB, 2022 WL 912720, at *16 (D. Md. Mar. 29, 2022) (finding that a self-contained academic setting was not necessary to guarantee Plaintiff a FAPE). ALJ Cancienne found that C.E.'s academic progress continued at Wheaton, and that he achieved good grades. Cancienne Decision at 29–30. Plaintiffs have not met their burden to show that the Wheaton resource class or any other aspect of the transfer diluted C.E.'s education or impeded his academic progress. The transfer to Wheaton, which C.E.'s parents consented to and had themselves repeatedly requested earlier in the school year, did not deny C.E. a FAPE and was not a change in placement such that an IEP team meeting was necessary.

For similar reasons, the Court also agrees with the ALJ that the April 2023 Amended IEP did not deprive C.E. of a FAPE. Plaintiffs contend that April 2023 IEP was procedurally defective because the IEP team did not honor C.E.'s parents' request for a meeting following the transfer to Northwood and that the April 2023 Amended IEP did not contain updated information regarding the lack of a self-contained GTLD program at Wheaton. ECF No. 23-1 at 25–26; ECF No. 33 at 10–11. ALJ Cancienne found that these did constitute procedural errors. Cancienne Decision at 31. But even if these were procedural violations, Plaintiffs have not shown that they had a material impact on

18

C.E.'s education or academic progress. *See T.B., Jr. by & through T.B., Sr. v. Prince George's Cnty. Bd. of Educ.*, 897 F.3d 566, 573 (4th Cir. 2018) ("The fact of a procedural IDEA violation does not necessarily entitle [Plaintiff] to relief[.] . . . To obtain the compensatory education he seeks, [Plaintiff] must show that this defect . . . had an adverse effect on his education."). To the contrary, ALJ Cancienne found that C.E. made appropriate progress and achieved good grades following the transfer to Wheaton. Cancienne Decision at 29–33. Because Plaintiffs have not met their burden to show that any procedural violations were material, the Court finds that the April 2023 Amended IEP did not deny C.E. a FAPE.

**D.    MCPS did not deny C.E. a FAPE related to the May 2023 Amended IEP**

Plaintiffs also contend that MCPS denied C.E. a FAPE by committing errors regarding the May 2023 IEP. Plaintiffs contend in their reply brief[4] that the May 2023 IEP was deficient because the changes were made by C.E.'s case manager instead of the IEP team and did not take necessary considerations into account. ECF No. 33 at 12. But ALJ Cancienne found otherwise, determining that the IEP team had two meetings at which they discussed the May 2023 IEP, and that Plaintiffs had not shown that they lacked notice of these meetings or of the draft IEP. Cancienne Decision at 33. ALJ Cancienne further found that C.E.'s parents shared concerns and feedback regarding the May 2023 IEP, which MCPS took into account. *Id.* at 35. As ALJ Cancienne's decision

---

[4] Plaintiffs did not raise the May 2023 IEP in their brief for judgment on the administrative record, ECF No. 23. But the May 2023 IEP was an issue in ALJ Cancienne's decision, and Defendants moved for judgment on the administrative record with respect to that issue. Accordingly, and because the Court finds for MCPS on this issue regardless, the Court will not deem Plaintiffs to have waived the May 2023 IEP issue.

was regularly made, the Court accepts her findings as correct unless Plaintiffs can disprove them. The Court has reviewed Plaintiffs' briefs and the relevant portions of the record and concludes that Plaintiffs have not met this burden.

Accordingly, there is no basis to find that the May 2023 IEP denied C.E. a FAPE.

### E.       Plaintiffs are not entitled to an IEE at public expense

Plaintiffs' final argument concerns C.E.'s assessments and the -53 case. Plaintiffs contend that they are entitled to an IEE at public expense because MCPS's assessments did not come within 90 days of the October 4, 2023 IEP meeting that called for a new assessment, as required by COMAR § 13a.05.01.06(E)(6) (hereinafter, the "90-day provision"). ECF No. 23-1 at 26–27. In the alternative, Plaintiffs contend that the MCPS psychological and speech-language evaluations were deficient because they overlooked certain considerations, such as an assessment for dyslexia or other language disorders. *Id.* at 23-1.

Regarding the timeliness argument, the 90-day provision states that "[t]he results of assessment procedures shall be used by the IEP team in reviewing, and, as appropriate, revising the student's IEP in accordance with Regulation .08B of this chapter within 90 days of the IEP team meeting as described in §E(4) of this regulation." Md. Code Regs. 13A.05.01.06(E)(6). Plaintiffs contend that MCPS violated this provision because the IEP team determined additional evaluations were necessary on October 4, 2023, but did not meet to use the evaluation results until February 16, 2024, 135 days later. ECF No. 23-1 at 27. MCPS, and ALJ Brown, argue that the 90-day provision refers to the window in which the IEP team must use the assessments results, once they have been produced. Brown Decision at 19; ECF No. 27 at 27. Under this interpretation, MCPS would not have been in violation of the regulations.

The parties and ALJ Brown did not identify any precedent clarifying the meaning of the 90-day provision, and the Court is likewise unaware of any such authority. The Court need not and does not decide whether MCPS violated the provision because, even assuming that it did, the procedural violation was harmless. "A procedural violation of the IDEA may not serve as the basis for recovery unless it resulted in the loss of an educational opportunity for the disabled child." *T.B.*, 897 F.3d at 573 (quotation omitted); *see also E.P.*, 2017 WL 3608180, at *8 ("Ordinarily, procedural violations of IDEA are subject to harmlessness analysis.") (quoting *Snyder ex rel. Snyder v. Montgomery Cty. Pub. Sch.*, Case No. 08-cv-1757-DKC, 2009 WL 3246579, at *6 (D. Md. Sept. 29, 2009)). Under Fourth Circuit precedent, "a violation of a procedural requirement of the IDEA (or one of its implementing regulations) must actually interfere with the provision of a FAPE before the child and/or his parents would be entitled to reimbursement relief." *DiBuo ex rel. DiBuo v. Bd. of Educ. of Worcester Cnty.*, 309 F.3d 184, 190–91 (4th Cir. 2002). In *DiBuo*, the court specifically rejected a proposed rule that "a procedural violation . . . [causing] interference with the parents' ability to participate in the IDEA process *per se* constitutes a denial of a FAPE to the disabled child at issue" in favor of the "actual interference" standard. *Id.* at 191. Here, Plaintiffs seek to enforce an even stricter rule—that a bare procedural violation without *any* evidence that the delay caused interference in the parents' participation or prejudiced the student in any way should lead to a reimbursement at public expense. As the ALJ noted, Ms. Esters refused to participate in the IEP team meeting following the assessment results. Brown Decision at 19. Because Plaintiffs have not shown that Plaintiffs were affected in any material way by the purported 45-day delay of

consideration of the MCPS assessments, the Court will not order IEEs at public expense on that basis.

Plaintiffs have not shown that the assessments were substantively deficient either. "In challenging an evaluation, courts have found that a parent cannot simply argue that the evaluation was inappropriate because they disagree with its findings." *E.P.*, 2017 WL 3608180, at *28 (quotation omitted). Instead, the key inquiry is whether the evaluator's methodology was inadequate. *See id.* at *27–28. 34 C.F.R. § 300.304 and COMAR § 13A.05.01.05 lay out the requirements for the methodology of an appropriate assessment. Among other requirements, evaluations must "[u]se a variety of assessment tools and strategies" and "technically sound instruments," avoiding the use of "any single measure or assessment as the sole criterion." 34 C.F.R. § 300.304(b).

Here, ALJ Brown found, and the Court agrees, that both Ms. Tame and Ms. Danclar were qualified evaluators and that both employed standard, varied methods that met the requirements of the regulation. Brown Decision at 18, 20. Plaintiffs emphasize the testimony of their expert witness, Dr. Jay Lucker, whose later assessment of C.E. revealed the possibility of dyslexia or an auditory processing disorder. ECF No. 23-1 at 28; ECF No. 33 at 14. But this is exactly the kind of second-guessing that the case law and regulations do not allow. Because MCPS's assessments applied appropriate methodology and complied with the regulations, Plaintiffs have not shown that they are entitled to an IEE at public expense.

## IV.   CONCLUSION

For these reasons, the Court will grant Defendant's motion for judgment on the administrative record and deny Plaintiffs' motions in the accompanying order.

Date:  March 26, 2026

_____/s/_____
Adam B. Abelson
United States District Judge